IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 05-cv-01868-MSK-PAC

COMMUNICATIONS WORKERS OF AMERICA,

        Plaintiff,

v.

DEX MEDIA EAST, L.L.C.,

        Defendant.

_____

**OPINION AND ORDER COMPELLING ARBITRATION**
_____

**THIS MATTER** comes before the Court pursuant to the parties' briefs as to the issue of arbitrability **(# 15, 16)**, and their responsive briefs **(# 18, 20)**; and the Plaintiff's Motion to Strike **(# 19)** the Defendant's brief, and the Defendant's response **(# 21)**.

The Plaintiff ("Union") commenced this action by means of a Complaint to Compel Arbitration **(# 1)** of a dispute over the assignment of work by the Defendant ("Dex"). The Court bifurcated the question of whether the Union's dispute was subject to the arbitration provisions of the parties' collective bargaining agreement from all other issues in the case, directed the parties to stipulate to the relevant facts, and to file simultaneous opening and response briefs addressing the issue of arbitrability.

At the time the parties filed their response briefs, the Union simultaneously filed a Motion to Strike **(# 19)** Dex's opening brief, arguing that the motion contained extensive factual

1

averments that were not the subject of a stipulation, and that the motion exceeded the Court's page limits.

The parties agree as to the general law governing the issue of arbitrability. In *AT&T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 648-50 (1986), the Supreme Court laid down several rules governing the role of courts and arbitrators in resolving industrial disputes. First, the agreement to arbitrate is a matter of contract, and the Court will compel arbitration only insofar as the parties have agreed to do so. 475 U.S. at 648. Second, the determination of whether a collective bargaining agreement requires arbitration of a particular dispute is a question for judicial, not arbitral, determination, unless the parties have clearly provided that an arbitrator can determine arbitrability. *Id.* at 649. Third, a decision as to arbitrability of a particular grievance must be made by the Court without regard to the merits of the underlying dispute. *Id.* at 649-50. Fourth, where the collective bargaining agreement contains an arbitration clause, the Court indulges a presumption of arbitrability, and should compel arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* at 650.

Mindful of the first rule, the starting point of the Court's analysis is the language of the collective bargaining agreement itself. Section 1.9 of the agreement provides that "all disputes arising during the term of this Agreement shall be settled through the grievance and arbitration provisions." The arbitration clause itself, Section 5.1 provides that "either party may elect to submit a grievance, which is otherwise subject to arbitration under the terms of this agreement, to arbitration." From these two clauses, the Court finds that the parties have agreed to arbitrate "all

disputes" between them, unless the contract provides that the agreement is not "otherwise subject to arbitration."

The crux of the dispute is whether Dex has violated the agreement by assigning work incident to the "Web Clicks" program to employees outside the bargaining unit. The contract provision implicated by this dispute is Section 1.3, which reads, in part, as follows:

> With respect to rate of pay, wages, hours of employment, and other conditions of employment, the Company hereby recognizes the Union as the exclusive bargaining agent for [various job classifications].
>
> This recognition does not extend to any new employee unit or work not currently being performed by members of the bargaining unit.

The Union contends that the Web Clicks program is merely an extension of Dex's pre-existing business of selling web sites and web-based marketing, which is work currently assigned to members of the bargaining unit under the first paragraph of Section 1.3. Dex contends that Web Clicks is a new product, and is thus "work not currently being performed by members of the bargaining unit" under the second paragraph of Section 1.3, and thus, that the Union is not recognized as the representative of Web Clicks employees.

Thus, the dispute between the parties is whether Web Clicks is work falling within the first or second paragraph of Section 1.3. This is clearly a dispute between the parties as to the interpretation of the contract, and one which falls within the broad grievance and arbitration language of Section 1.9. Dex does not cite to any language in the contract expressly excluding disputes of this type from the grievance procedure, and thus, the dispute is arbitrable.

Dex raises several arguments that the dispute is not arbitrable, but most of these arguments revolve around a central premise: that Web Clicks is a new product under Section 1.3,

and thus, it falls outside the scope of the Union's representation. *See Docket # 16 at 7-15.* Of course, whether Web Clicks is a new product or an extension of existing work is a question of contract interpretation that clearly falls within the broad grievance and arbitration language of Section 1.9, and thus, is a matter for an arbitrator to decide upon the appropriate record. To argue that the issue of whether the work is new or pre-existing is not arbitrable because the work is new simply begs the question. Whether the work is new or existing work is a question going to the merits of the dispute, and is not something that this Court can consider in determining arbitrability. *AT&T*, 475 U.S. at 649-50.

Dex goes on to argue that the court can, and indeed, must consider the merits of a dispute where the merits are inextricably entwined with the question or arbitrability. *Citing Oil, Chemical & Atomic Workers Intl. Union v. Conoco, Inc.*, 241 F.3d 1299 (10th Cir. 2001) and *Independent Lift Truck Builders Union v. Hyster*, 2 F.3d 233, 236 (7th Cir. 1993). Dex is correct that these cases stand for the general proposition that where the requirement that the court rule on arbitrability collides with the injunction that the court refrain from addressing the merits, the court must consider the merits to the extent necessary to address the arbitrability question. *Hyster*, 2 F.3d at 236. However, that situation is not present here, as Dex has not demonstrated that the Court must necessarily find that the Web Clicks program is or is not "new work" under Section 1.3 before it can deem the matter arbitrable.

This fact can best be demonstrated by contrasting the facts here with those in *Conoco*. There, the parties had a collective bargaining agreement that apparently provided for binding arbitration of unresolved grievances. However, the agreement also contained a "management rights" clause, setting forth certain types of employment decisions that were reserved to the sole

discretion of the employer. Of critical importance, the agreement provided that "grievances originating under the management rights clause are subject to the grievance procedure <u>but cannot be submitted to arbitration</u>." 241 F.3d at 1301 (brackets omitted, emphasis added). When the union sought to compel arbitration of grievances that arguably fell within the management rights clause, the District Court declined to expressly decide whether the grievances were arbitrable, *id.* at 1301-02, apparently out of concern that to do so, it would have to reach the merits of whether the challenged actions did or did not fall within the management rights clause. The 10th Circuit reversed, requiring the District Court to expressly rule on the issue of arbitrability. *Id.* at 1305. In doing so, the court appeared to join in the reasoning of cases like *Hyster* that compel the District Courts to reach the merits of the dispute to the extent that the merits are inextricably entwined with the question of arbitrability. *Id.* at 1304.

The key to *Conoco* is express language in the parties' contract that they had not agreed to arbitrate disputes arising under the management rights clause. Determining whether a grievance is arbitrable under such a collective bargaining agreement is thus a two-step process: the court must first determine whether the grievance falls within the general agreement to arbitrate, and, if so, it must then decide whether the parties have otherwise excluded the subject of the grievance from arbitration. In a case like *Conoco*, where the exclusion applies to grievances that concern defined management rights, the court can make that second determination only by examining the merits of the grievance and deciding whether those merits touch on non-arbitrable management rights. By contrast, the parties here have agreed to a broad arbitration provision, and nothing in their agreement appears to exclude disputes over whether work is "new" or not from that broad agreement to arbitrate. The Court need not determine whether or not the Web Clicks program is

"new work" or not, because nothing in the contract expressly excludes claims involving alleged "new work" from Dex's general agreement to arbitrate "all disputes." Unlike *Conoco*, there is no reason for this Court to reach the merits of the grievance in order to determine that the parties have agreed to arbitrate it.

Dex makes one final argument on this point: that the second paragraph of Section 1.3 provides that Dex does not recognize the Union as the bargaining representative for any "new work," and thus, Dex cannot be deemed to have agreed to arbitrate "new work" claims with a Union it does not recognize for such work. Once again, this argument begs the question, as it assumes that Dex is correct that Web Clicks is indeed "new work," and thus, that the Union cannot possibly be deemed to be the representative for Web Clicks workers.[1] Whether the work is "new work" or not is a question on the merits of the grievance for an arbitrator to decide. By Section 1.3's own terms, if the arbitrator agrees with Dex that the work is indeed "new," the work will not be deemed to fall within the scope of the Union's representation. This argument is not one directed at the arbitrability of the grievance, because Section 1.9 establishes that "all disputes" are subject to arbitration. Indeed, by the terms of Section 1.9, even disputes as to the scope of the Union's representation would be arbitrable unless specifically excluded by some other provision in the agreement.

---

[1] A different hypothetical demonstrates Dex's logical fallacy: assume that a union and employer have an agreement that: (i) the union represents all employees; (ii) no employee will be discharged without just cause; and (iii) the parties will arbitrate all disputes between them. When the union grieves an employee's discharge as violating clause (ii), the employer contends the grievance is not arbitrable because the employee's termination was supported by just cause, and thus, as a now-former employee, the union is not authorized to represent him under clause (i).

Accordingly, the Court finds that the Union's grievance is subject to the arbitration clause in the parties' collective bargaining agreement. The Court **GRANTS** the Union's Motion to Compel Arbitration **(# 1)**, and directs that the parties immediately proceed to arbitrate the Union's grievance pursuant to the arbitration process set forth in the agreement. Because the Court has decided the issue without consideration of those portions of Dex's brief to which the Union objects, the Union's Motion to Strike **(# 19)** is **DENIED** as moot. Upon entry of this Order, the Clerk of the Court shall close this case.

Dated this 6th day of September, 2006

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge